## CITY OF YPSILANTI v CIVIL RIGHTS COMMISSION

### OPINION OF THE COURT

1. CIVIL RIGHTS—COMMISSION—JURISDICTION—CONSTITUTIONAL LAW—
   STATUTES.

   The Civil Rights Commission has jurisdiction to entertain a
   complaint of employment discrimination on the basis of age
   and sex although the constitutional provision which created the
   commission authorized it to investigate only discrimination
   because of "religion, race, color or national origin"; legislation
   which subsequently expanded the jurisdiction of the commis-
   sion to include complaints of discrimination because of age and
   sex is constitutionally valid (Const 1963, art v, § 29; MCLA
   423.303a).

2. MUNICIPAL CORPORATIONS—HOME RULE CITIES—POWERS.

   The legislative body of a home rule city is permitted to make
   policy that is not inconsistent with state statutes or is not
   constitutionally infirm.

3. MUNICIPAL CORPORATIONS—EMPLOYMENT—OCCUPATIONAL QUALIFI-
   CATIONS—POWERS.

   A municipality has the right to establish bona fide occupational
   qualifications for various job classifications (MCLA 423.303a).

REFERENCES FOR POINTS IN HEADNOTES
[1] 15 Am Jur 2d, Civil Rights § 56 *et seq.*
[2] 56 Am Jur 2d, Municipal Corporations, Counties, and Other
    Political Subdivisions §§ 125, 126.
[3] 56 Am Jur 2d, Municipal Corporations, Counties, and Other
    Political Subdivisions § 246 *et seq.*
  63 Am Jur 2d, Public Officers and Employees § 44 *et seq.*
[4] 2 Am Jur 2d, Administrative Law § 327 *et seq.*
[5] 2 Am Jur 2d, Administrative Law § 595 *et seq.*
[6, 9] 20 Am Jur 2d, Courts § 117.
[6, 9, 10] Superintending control over inferior tribunals. 112 ALR
    1351.
[7] 27 Am Jur 2d, Equity § 100.
[8] 2 Am Jur 2d, Administrative Law § 596.
[10] 20 Am Jur 2d, Courts § 116.

4. CIVIL RIGHTS—COMMISSION—JURISDICTION—MUNICIPAL CORPORA-
TIONS—OCCUPATIONAL QUALIFICATIONS

The Civil Rights Commission lacked jurisdiction as a matter of
law to consider a complaint against a city alleging age and sex
discrimination in employment where the city, pursuant to a
statute authorizing it to establish bona fide occupational qualifi-
cations for various job classifications, limited prospective new
employees of its police force to those persons between the ages
of 21 and 31 (MCLA 423.303a).

CONCURRENCE IN PART, DISSENT IN PART BY DANHOF, P. J.

5. CIVIL RIGHTS—COMMISSION—ADMINISTRATIVE LAW—EXHAUSTION OF
REMEDIES.

*A city, faced with a complaint from the Civil Rights Commission
alleging discrimination in its employment practices, prema-
turely started suit against the commission in circuit court; it
should have answered and defended on the merits before the
commission.*

6. CIVIL RIGHTS—COMMISSION—SUPERINTENDING CONTROL—ADMINIS-
TRATIVE LAW—INTERFERENCE WITH FUNCTIONS.

*An order of superintending control, the effect of which is to
prevent the Civil Rights Commission from proceeding upon a
complaint of employment discrimination, should not be issued
because the courts should not act on such a matter and prevent
the commission from functioning effectively.*

7. CIVIL RIGHTS—COMMISSION—MUNICIPAL CORPORATIONS—EQUITABLE
RELIEF.

*A plaintiff city is not entitled to equitable relief against the Civil
Rights Commission where it has not made a sufficient showing
that it would suffer harm if required to proceed initially before
the commission.*

8. ADMINISTRATIVE LAW—EXHAUSTION OF REMEDIES—JUDICIAL RE-
VIEW.

*A fundamental principle of administrative law requires that all
administrative remedies be exhausted before judicial relief is
sought, and this rule is not suspended merely because the
administrative action may be erroneous.*

9. APPEAL AND ERROR—SUPERINTENDING CONTROL—ALTERNATIVE
REMEDIES.

*An order of superintending control will not issue where an
alternative remedy is available.*

10. Appeal and Error—Superintending Control—Discretion—Review.

> Grant or denial of an order of superintending control is within the sound discretion of the court and a denial of the order should be upheld where no clear abuse of that discretion is shown.

Appeal from Washtenaw, Edward D. Deake, J. Submitted Division 2 June 7, 1974, at Lansing. (Docket No. 18991.) Decided August 15, 1974. Leave to appeal applied for.

Complaint by the City of Ypsilanti against the Civil Rights Commission for an order of superintending control. Judgment for defendant. Plaintiff appeals. Reversed and remanded.

*Bronson & Egnor* (by *Walter K. Hamilton),* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Michael A. Lockman* and *Howard E. Goldberg,* Assistants Attorney General, for defendant.

Before: Danhof, P. J., and Holbrook and O'Hara,* JJ.

O'Hara, J. In 1963 this state adopted a new constitution. One of its provisions, article V, § 29, provides as follows:

"There is hereby established a civil rights commission which shall consist of eight persons, not more than four of whom shall be members of the same political party, who shall be appointed by the governor, by and with the advice and consent of the senate, for four-year terms not more than two of which shall expire in the same year. It shall be the duty of the commission in a manner which may be prescribed by law to investigate

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

alleged discrimination against any person because of religion, race, color or national origin in the enjoyment of the civil rights guaranteed by law and by this constitution, and to secure the equal protection of such civil rights without such discrimination. The legislature shall provide an annual appropriation for the effective operation of the commission.

"The commission shall have power, in accordance with the provisions of this constitution and of general laws governing administrative agencies, to promulgate rules and regulations for its own procedures, to hold hearings, administer oaths, through court authorization to require the attendance of witnesses and the submission of records, to take testimony, and to issue appropriate orders. The commission shall have other powers provided by law to carry out its purposes. Nothing contained in this section shall be construed to diminish the right of any party to direct and immediate legal or equitable remedies in the courts of this state.

"Appeals from final orders of the commission, including cease and desist orders and refusals to issue complaints, shall be tried de novo before the circuit court having jurisdiction provided by law." Const 1963, art V, § 29.

It is to be noted carefully that the four factors of unlawful discrimination over which the commission was granted jurisdiction were "religion, race, color or national origin". No more, no less.

However, before the Constitution of 1963 was adopted, the Legislature had enacted a Fair Employment Practices Act. MCLA 423.301 et seq.; MSA 17.458(1) et seq. Its legislative history is as follows:

1955 PA 251 was given effect October 14 of that year. Then, effective January 1, 1964, the Legislature enacted yet another statute. It purported to transfer to the Civil Rights Commission the powers and duties of the Fair Employment Practices Commission. MCLA 37.6; MSA 3.548(6). In 1965

the Fair Employment Practices Act was amended
to grant the Civil Rights Commission, successor
agency to the now defunct Fair Employment Prac-
tices Commission, jurisdiction over discriminatory
employment practices with respect to age. MCLA
423.303a; MSA 17.458(3a). By a 1966 amendment
the Civil Rights Commission's jurisdiction was
further expanded to include complaints involving
sex discrimination in employment. MCLA
423.303a, *supra.*

The statements of questions involved are stated,
almost to the word, identically.

"I.

"Whether Section 37.6 and related sections of the
Compiled Laws of the State of Michigan, extending the
jurisdiction of the Civil Rights Commission beyond the
expressed grant of jurisdiction embodied within the
Constitution of 1963 are constitutionally valid.

"The trial court answered this question 'yes'.

"The defendant-appellee would answer this question
'yes'.

"II.

"Assuming the validity of the statutes in question,
whether the allegations contained within the charge of
the Civil Rights Commission are sufficient to confer
jurisdiction upon the Civil Rights Commission within
the terms of that statute.

"The trial court answered this question 'yes'.

"The defendant-appellee would answer this question
'yes'."

The facts, which were stipulated, necessary to
an understanding of the stated legal issues are as
follows. One Mary Foley applied for a position as a
member of the police force of plaintiff city. She
was rejected. She filed a complaint with defendant

Civil Rights Commission alleging unlawful discrimination because of her age, race and sex. The commission conducted an investigation, and found probable cause to support Mary's complaint as to *age* and *sex* only.

Plaintiff city did not answer the complaint on the merits. Rather it started a suit in circuit court seeking an order of superintending control directing the commission to cease its proceedings as being in excess of its constitutional powers, which could not be legislatively expanded. Additionally, said the city, not only does the commission lack jurisdiction, Mary did not make out a case of discrimination on the merits. Thirdly, the city alleged that Mary was disqualified because Ypsilanti as a home-rule city is clearly entitled to prescribe reasonable regulations for the qualifications of its employees.

The trial judge held against the city on the first stated question and did not pass upon the second. He favored us with a detailed and well documented opinion. We take this opportunity also to commend both counsel for their comprehensive briefs and their incisive oral presentations.

At our level of adjudication we are bound by precedential opinion of the Supreme Court. On the first question as to the right of the commission to entertain the complaint we affirm the trial judge on the authority of *Beech Grove Investment Co v Civil Rights Commission,* 380 Mich 405; 157 NW2d 213 (1968). The opinion reflects differing views of the problem before us. Justice ADAMS stands for a liberal view of the authority of the commission to enforce any right that may fairly be called a "civil right" and which stems from the constitutional provision itself, any other statute dealing with a civil right, together with all rights emanating from the common law of this State.

Justice SOURIS in a separate opinion held that the commission had the right and duty, with or without express enabling legislation, to protect against discriminatory denial of those civil rights which are of the magnitude of fundamental rights of citizenship and of the essence of civil freedom.

Justices BLACK, DETHMERS, and KELLY in dissent held tersely and clearly that legislative implementation was requisite under the stipulated question of that case.

The majority of the Court approved the grant of additional rights and duties to the commission. We are bound by the spirit and letter of that holding.[1]

We turn now to what we consider the dispositive issue.

Ypsilanti is a home-rule city. Its legislative body is permitted to make policy that is not inconsistent with state statutes or is not constitutionally infirm.

In the exercise of this legislative judgment it chose to restrict candidates for members of its police force to applicants between the ages 21 and 31.[2] Certainly the municipality has the right to establish bona fide occupational qualifications for various job classifications.[3]

It is not for this Court or any judicial reviewing authority so far as we know to say to Ypsilanti "you must consider applicants for membership of the police force begining at age 18 or extending to age 45". We cannot by judicial fiat disenfranchise the voters of Ypsilanti in a purely legislative question.

---

[1] For a thoughtful discussion relative to the possible implications of *Beech Grove Investment Co v Civil Rights Commission,* 380 Mich 405; 157 NW2d 213 (1968), see 15 Wayne L Rev 3, 27–29 (1968).

[2] It may be more than mere coincidence that the regulations of the City of Ypsilanti contain virtually identical age limitations to those found in MCLA 38.510; MSA 5.3360:

[3] See MCLA 423.303a(a); MSA 17.458(3a)(a).

Under the stipulated facts applicant Foley was ineligible for consideration as a matter of law.

That part of the opinion and order of the trial judge authorizing the commission to proceed with the charge of unlawful discrimination on the grounds of age and sex is reversed. The cause is remanded to the trial court for entry of a judgment granting . superintending control over the commission to the extent herein delineated.

No costs, a public question.

HOLBROOK, J., concurred.

DANHOF, P. J. *(concurring in part, dissenting in part).* That part of the majority's opinion resolving the first issue is strengthened by the decision in *Michigan Civil Rights Commission v Clark,* 390 Mich 717, 727; 212 NW2d 912, 916 (1973). I am in agreement with that part of the opinion.

However, I must dissent from the manner in which the majority has resolved the second issue because it is inappropriate at this stage of this case. The majority's opinion may well encourage other respondents to attempt to similarly circumvent the Civil Rights Commission.

There is no doubt that the plaintiff city has the right to establish bona fide occupational qualifications for various job classifications. There is considerable doubt, however, as to the advisability of making the initial determination in the circuit court or this Court as to what constitutes a bona fide occupational qualification before the Civil Rights Commission has had an opportunity to pass upon the question. The plaintiff city chose to respond to the complaint by starting suit in circuit court rather than by answering and defending on the merits before the commission. Recourse to the court at that point was premature.

The constitutional stature of the Civil Rights Commission has been reaffirmed in *Michigan Civil Rights Commission v Clark, supra,* 390 Mich 726; 212 NW2d 915, 916 (1973), which held that the provisions of MCLA 564.401a; MSA 26.1300(401a) authorizing the removal of a proceeding before the commission to the circuit court was unconstitutional. Justice Levin, writing for the majority, reasoned that just as the Legislature may not prevent the executive or judicial branches of government from exercising their powers, similarly the Legislature could not prevent the Civil Rights Commission from functioning effectively.

The majority has recognized the significance of the spirit as well as the letter of the holdings of the Supreme Court. This recognition prevents me from joining in the decision to reverse. The courts no less than the Legislature should not act in a matter which prevents the Civil Rights Commission from functioning effectively. The decision of the majority ordering the issuance of the order of superintending control will interfere with the orderly functioning of the commission.

Another reason for not issuing the order of superintending control under circumstances such as these was referred to in *Clark:*

" 'An individual against whom the Commission has proceeded may seek injunctive relief from threatened harm under the same principles applicable to threatened illegal action by other administrative agencies', including further developments (after the adoption of the 1963 Constitution) of general application of such principles." *Michigan Civil Rights Commission v Clark, supra,* 390 Mich 725; 212 NW2d 915.

In the present case, equitable relief is not warranted because the city has not made a sufficient showing that it will suffer harm if required to

proceed initially before the Civil Rights Commission.

One of the fundamental principles of administrative law requires that all administrative remedies be exhausted before judicial relief is sought. *Holman v Industrial Stamping & Manufacturing Co,* 344 Mich 235; 74 NW2d 322 (1955); *Craig v Detroit Police Department,* 49 Mich App 599; 212 NW2d 235 (1973). This rule was based upon the presumption that the administrative agency will decide the issue correctly if it is given an opportunity to do so. The rule is not suspended merely by the fact that the administrative action may be erroneous. *Bennett v Royal Oak School District,* 10 Mich App 265, 159 NW2d 245 (1968), *leave to appeal denied,* 381 Mich 755 (1968).

In addition, the policy considerations governing the issuance of an order of superintending control, expressed in GCR 1963, 711.2, are further indication of the unsuitability of that relief in this case:

"The order of superintending control should not be issued if another plain, speedy and adequate remedy is available to the party seeking the order."

The city has another adequate remedy; it can participate in the proceedings before the commission, reserving resort to the courts until the commission's ruling is known. Where an alternative remedy is available, the order of superintending control will not issue. *Bennett v Royal Oak School District, supra.*

There is a strong possibility that, following a hearing, the Civil Rights Commission would have determined that the age restriction was a "bona fide occupational qualification" and, therefore, that it did not constitute an unfair employment practice under MCLA 423.303a(a); MSA 17.458(3a)(a).

After such a determination had been made, the city, if still dissatisfied, could have taken an appeal to the circuit court on the record developed before the commission. *Lesniak v Fair Employment Practices Commission,* 364 Mich 495, 506; 111 NW2d 790, 796 (1961). Had the city allowed the administrative process to continue to completion, it is conceivable that no court action would have been required. *Burton v Velosky,* 22 Mich App 646, 649–650; 177 NW2d 679, 681 (1970).

Finally, the grant or denial of an order of superintending control is within the sound discretion of the trial court. A denial of the order should be upheld in the absence of a clear abuse of that discretion. *People v East Lansing Judge,* 42 Mich App 32, 36; 201 NW2d 318, 321 (1972); *LaPratt v Keego Harbor Justice of the Peace,* 1 Mich App 657, 660; 137 NW2d 769, 770–771 (1965). There has been no showing that the trial court abused its discretion in the present case. I would affirm.